# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **RHONDA CINDY SAMUELS**<br>　　　　**Plaintiff** | **CIVIL ACTION NO. 3:20-cv-275** |
| **versus** | **JUDGE** _____ |
| **SHELL OIL PRODUCTS COMPANY, L.L.C.**<br>　　　　**Defendant** | **MAGISTRATE JUDGE** _____ |

## COMPLAINT

NOW COMES Plaintiff, RHONDA CINDY SAMUELS, Plaintiff herein, who with respect represents that:

### JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff asserts claims under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as the Defendant's registered office is in Baton Rouge, Louisiana.

### PARTIES

3. Plaintiff, RHONDA CINDY SAMUELS, is a citizen and resident of the Parish of Ascension, State of Louisiana.

4. Defendant, SHELL OIL PRODUCTS COMPANY, L.L.C. (hereinafter referred to as "Shell") is a foreign corporation authorized to do business and doing business in the State of Louisiana.

1

5. Plaintiff is seeking declaratory and injunctive relief and compensatory, liquidated, and punitive damages.

**FACTUAL ALLEGATIONS**

6. The Plaintiff was employed by Shell from July 1, 2002 until her termination on February 27, 2020. After a transfer from another unit within the Shell facility in April of 2017, she served as an Operator in Logistics and Utilities at Shell's refinery at Convent, Louisiana until her termination.

7. Upon information and belief, Shell's Convent Refinery employs approximately 650 persons.

8. The Plaintiff was diagnosed by her physicians in 2014 as suffering from migraine headaches. These migraine headaches, when they flared up, made her temporarily unable to perform her job.

9. At all times relevant hereto, Defendant was aware of Plaintiff's health conditions and their resulting symptoms and limitations. Beginning in 2014, the Plaintiff kept the Defendant continuously apprised of her diagnosis and the resulting symptoms and limitations. In fact, the Defendant repeatedly required the Plaintiff to submit to medical examinations by company doctors and nurses and repeatedly required Plaintiff to submit and re-submit medical certification forms attesting to her continued need for leave.

10. The Plaintiff timely filed a charge with the United States Equal Employment Opportunity Commission ("EEOC"), charge no. 461-2019-01004, alleging disability and sex discrimination and retaliation in correlation with the October 15, 2018 discipline.

11. On February 3, 2020, the EEOC issued a right-to-sue letter to Plaintiff regarding the October 15, 2018 disciplinary action.

### COUNT 1: INTERFERENCE WITH FMLA RIGHTS

12. Plaintiff was an "eligible employee," as that term is defined in 29 U.S.C. § 2611(2)(A). She was employed by Shell for approximately eighteen (18) years and, at all times relevant hereto, she was entitled to FMLA leave. Shell was a "covered employer," as that term is defined in 29 USCA § 2611(4)(A)(I). Shell was engaged in commerce, and it employed 50 or more employees for each working day during each of 20 or more calendar workweeks at all times relevant hereto.

13. Because of the severity of the Plaintiff's migraine headaches and symptoms thereof, it was necessary and medically recommended that the Plaintiff take significant amounts of leave in 2017, 2018, and 2019. Plaintiff gave her employer adequate notice of her need for leave and the reasons therefore, supported by documentation from her physician(s).

14. In each year, since 2017, including the year 2017, the Plaintiff worked an excess of 1,250 hours. For example, in 2017, she worked 1,732 hours. The only exception was, in 2018, she worked approximately 1,056. However, the Defendant required her to submit to extensive medical examinations by her own doctor, by the company doctor, company nurses, and on one occasion a neurologist of the company's choosing and to submit medical certifications before she could return to work after each and every flare up of migraine headaches. These extensive procedures, unnecessarily and substantially prolonged her periods of FMLA leave before she could return to work after each instance of taking intermittent leave. In 2018 alone, this extensive and unnecessary pre-return to work procedures prolonged the Plaintiff's absences for at least 372 hours. Had the Plaintiff allowed promptly return to work, she would have worked at least 1,428 hours in 2018. Plaintiff alleges that Defendant's actions in this respect violated 29 C.F.R. § 825.312(f), which

provides in part that "An employer is not entitled to a certification of fitness to return to duty for each absence taken on an intermittent or reduced leave schedule."

15. On October 15, 2018, the Defendant placed Plaintiff on formal discipline under the Defendant's "Decision-Making Leave" which, according to Shell, is the last step in its purported progressive discipline policy. This discipline was explicitly based on the fact that the Plaintiff had taken leave on five (5) occasions during 2017 and 2018. In fact, Shell's paperwork which accomplished its formal discipline, concluded by stating that:

- "On May 1, 2018 you exhausted your FMLA time, which is considered a chargeable per the Shell Disability Policy. This total chargeable absence requires a response of formal discipline …"

- "Per the Shell Disability and Conduct Attendance Management Policy, these absences were considered chargeable and/or therefore are resulting in discipline …"

- "Your failure to improve and sustain an acceptable level of attendance lead to additional corrective action, up to termination …"

- "Failure to correct this will result in further discipline including termination of your employment …"

- "You should also understand that any satisfaction job performance or any violation of company Polices Rules or procedures will result in termination. This DML will remain active in your file for 24 months."

16. The dates of the absences for which Ms. Samuels was placed on DML by Defendant were:

1. August 16 and 17, 2017;

2. September 13, 14, and 18, 2017;

3. May 2 through June 17, 2018;

4. June 25 through July 22, 2018; and

5. August 1 through October 12, 2018.

17. During the meeting at which Plaintiff was informed that she was being placed on DML, she was told that any further "flare-ups" of her condition could result in her termination.

18. According to Defendant, it calculated its employees' FMLA eligibility under a "rolling" 12-month period formula in accordance with 29 C.F.R. § 825.200(b)(4). Under that formula, "each time an employee takes FMLA leave the remaining leave entitlement would be any balance of the 12 weeks which has not been used during the immediately preceding 12 months." See id. at § 825.200(c). However, Plaintiff contends that, under the proper application of the "rolling" formula, some or all of the above absences should have been designated as FMLA leave. Thus, Defendant denied Ms. Samuels benefits to which she was entitled, which played a diret causal role in her discipline and termination.

19. As a direct result of Shell's placing the Plaintiff on DML because of her disability and its contrivance of a pretextual reason for her termination, the Plaintiff was terminated and has suffered loss of income, benefits, and other compensation.

20. The Plaintiff's employment was terminated by the Defendant on February 27, 2020. The events that led to her termination were as follows. A former co-worker and personal friend, Perry Duhe, died on January 27, 2020. Many of the Plaintiff's co-workers attended the funeral. The Plaintiff wanted to attend the funeral as well. However, a permit training was scheduled for January 29, 2020, which was on one of the days of the Plaintiff's scheduled days off. Therefore, on Jan 27, 2020 the Plaintiff asked her second-line supervisor, Damian Boyle, for permission to attend the funeral and to reschedule the permit training.

21. At 3: 57 P.M. on January 27, 2020, Boyd responded that the Plaintiff could not change the training schedule. However, on January 28, 2020 at 3:53 P.M., Boyd texted the Plaintiff that she could attend the funeral for a short time if she had a break in the training the next day. On

January 29, 2020, the Plaintiff traveled to the location of the training session and informed Glenn Taylor, who was in charge of the training session that she would be leaving for s short period of time to attend the funeral. Mr. Taylor worked toward re-scheduling the training for a number of the employees who wished to attend the funeral. The plaintiff then spoke to Glenn Taylor, who is in charge of the training. Taylor, who suggested that the training be rescheduled. The Plaintiff then informed both her immediate supervisor, Dwayne Chriss, that Taylor was rescheduling the training class.

22.     The Plaintiff then attended the visitation for approximately thirty (30) minutes. At 5:40 P.M. on January 29, 2020, the Plaintiff received a text message from Boyle disapproving of her rescheduling the training. Thereafter, the Plaintiff was terminated on February 27, 2020 for allegedly disobeying a direct order with respect to her rescheduling of the training, which accusation is absolutely false and pretextual.

23.     The Plaintiff's employment records show that the Plaintiff's taking of FMLA leave [was] a negative factor in employment actions, involving the Plaintiff. Therefore, the Defendant violated 29 CFR § 825.220(c) and penalized her for exercising her FMLA rights in violation of 29 U.S.C. § 2615(a)(1) of the FMLA. Indeed, the law prohibits an employer from using an employee's use of FMLA leave as a negative factor in promotion, termination, or other employment decisions.

24.     Shell interfered with Plaintiff's rights under the FMLA to take 12 weeks of unpaid leave per year (29 USC § 2612), as well as her right to be reinstated to the same or an equivalent position after taking protected leave (29 U.S.C. § 2614).

25.     Shell's violations of the FMLA were willful or in reckless disregard of Plaintiff's federal statutory rights. The legal requirements regarding FMLA leave are set forth clearly, in no uncertain terms, in the regulations of the United States Department of Labor implementing the

6

FMLA. These requirements are not vague, ambiguous, or newly implemented. Shell had no reasonable excuse for violating them.

### COUNT 2: FMLA RETALIATION

26. The Plaintiff incorporates herein by reference paragraphs 1-25 above.

27. The Defendant retaliated against the Plaintiff because of her use of FMLA leave, in violation of 29 U.S.C. § 2615(b).

### COUNT 3: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

28. The Plaintiff incorporates herein by reference paragraphs 1-25 above.

29. Plaintiff is "an individual with a disability" within the meaning of the ADA, as the symptoms and limitations caused by her migraine headaches substantially limited her ability to perform one or more major life activities, including work, thinking, and concentrating, during flare-ups of her migraine headaches, as compared to most people in the general population. § 1630.2 (j)(l). The Plaintiff's migraine headaches were exacerbated by stress, which she perceived to be because of harassment on the job.

30. The Plaintiff, at all times relevant hereto, was a qualified individual with a disability within the meaning of the ADA, she was able to perform with or without reasonable accommodations, the essential accommodations of her previous employment position. Indeed, she competently performed duties of an Operator for Shell for eighteen (18) years with no noted performance deficiencies and was qualified in terms of her skills, training, education, and experience.

31. At all times relevant hereto, Plaintiff was qualified to perform the essential functions of her position as an Operator, with or without reasonable accommodations, as she had successfully performed the essential duties of this position for eighteen (18) years.

### COUNTS 4-5: DISCRIMINATORY TERMINATION UNDER THE ADA AND FMLA

32. The Plaintiff incorporates herein by reference paragraphs 1-25 above.

33. Defendant disciplined and thereafter terminated the Plaintiff's employment because of her disability, in violation of the ADA and the FMLA.

34. The Plaintiff contemplates filing a second EEOC charge of disability discrimination in connection with her termination and respectfully requests the right to amend this Complaint upon exhaustion of these EEOC remedies.

### COUNT 6: SEX DISCRIMINATION IN VIOLATION OF TITLE VII

35. The Plaintiff incorporates herein by reference paragraphs 1-25 above.

36. Plaintiff's similarly situated coworker, Charles Finley (African-American, male) was treated more favorably than plaintiff under similar circumstances. He was not disciplined for taking additional sick leave, beyond that guaranteed by the FMLA, to seek treatment.

37. Plaintiff alleges that Defendant's actions constitute discrimination on the basis of her sex (female) in violation of Title VII.

### INJUNCTIVE RELIEF

38. The Plaintiff respectfully requests that this Court reinstate her to the position at Shell from which she was terminated.

### DAMAGES

39. As a result of Defendant's conduct, Plaintiff has suffered damages in the form of lost wages and benefits. Plaintiff is entitled to back pay and fringe benefits, plus interest on that amount, to compensate her for that damage.

40. Plaintiff is also entitled to statutory liquidated damages in an amount equal to the amount awarded as back pay and fringe benefits with interest. 29 U.S.C. § 2617(a)(1)(A)(iii).

41. Plaintiff has also suffered mental and emotional anguish and loss of enjoyment of life.

42. Plaintiff has also had to retain the services of an attorney as a result of her wrongful termination, and is entitled to recover her attorneys' fees, litigation expenses, and court costs.

## JURY DEMAND

43. Plaintiff respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, Rhonda Cindy Samuels, respectfully prays as follows:

a. For a declaratory judgment finding that the Defendant, Shell Oil Company, LLC, because of the actions and omissions described hereinabove, violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

b. That the Plaintiff be reinstated as an employee of the Defendant in the same or similar position with the same or similar pay and benefits to that from which she was wrongfully terminated or be awarded front pay with the restoration of full seniority rights and all other benefits retroactive to the date of the termination of the employment;

c. That the Plaintiff be awarded all wages, salary, fringe benefits, front pay, and other compensation lost as a result of Defendant's unlawful conduct in an amount to be determined by the jury;

d. That the Plaintiff be awarded liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

e. That Plaintiff be awarded punitive damages under the ADA;

f.  That the Plaintiff be awarded such compensatory damages as are reasonable in the premises, together with legal interest in accordance with law;

g.  For reasonable attorney's fees, litigation expenses, and all costs of this proceeding;

h.  That the Plaintiff be awarded other and further relief as the Court deems just and appropriate.


Respectfully Submitted;


*/s/ Robert Moseley Schmidt*
J. ARTHUR SMITH, III, T.A. (#07730)
ROBERT MOSELEY SCHMIDT (#37934)
J. ARTHUR SMITH, IV (#37310)
SMITH LAW FIRM
830 North Street
Baton Rouge, Louisiana 70802
Telephone: (225) 383-7716
Facsimile: (225) 383-7773
jasmith@jarthursmith.com
rschmidt@jarthursmith.com
asmithiv@jarthursmith.com
*Attorneys for Plaintiff, Rhonda Samuels*